Sarah Elizabeth SCOTT, et vir, Appellants,

v.

Arthur E. BISHOP et al., Appellees.

No. 5990.

Court of Civil Appeals of Texas, Waco.

April 12, 1979.

Rehearing Denied May 24, 1979.

Douglas Riley, Jr., Dallas, for appellants.

Larry F. Amerine and Rick W. Hightower, Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, for appellees.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiffs Scott from a take-nothing judgment in suit to declare a warranty deed to be a mortgage; and to enforce an alleged option to repurchase the property.

Plaintiffs Sarah Scott and husband sued defendants Arthur E. Bishop and son Arthur Patrick Bishop, alleging plaintiffs in 1940 acquired as their homestead a described house and lot in Dallas; that in 1959

plaintiffs borrowed money from Mitchell Cook, and in 1964 and 1970 they borrowed money from defendant Arthur E. Bishop, in all such instances pledging their homestead as collateral; that the transactions wherein the money was borrowed was accomplished by their giving a warranty deed to Cook in the first instance and to Arthur E. Bishop in the second and third instances; that the deeds did not operate to vest any title in the grantees other than a security interest in the property; that this method of borrowing money on a homestead has been used since the early days of the Republic; that in May 1970 they executed a deed to Arthur E. Bishop of the property for a total consideration of $11,551.86; that the property was worth $25,000. at such time; that Bishop has paid certain taxes and insurance, and plaintiffs have made payments to Bishop; that Bishop gave them a continuing option to repurchase the property; that in 1976 Arthur E. Bishop purported to convey the property to his son Arthur Patrick Bishop for $40,000.; that such purported sale is void; and that Arthur E. Bishop held the property as trustee for plaintiffs.

Plaintiffs prayed the deed be declared a mortgage; that the accounts of the parties be adjusted and reconciled and award be made of amounts owed either party; that the option given plaintiffs by Arthur E. Bishop to repurchase be enforced; and he be required to convey the property to plaintiffs.

Trial was to a jury which in answer to special issues found: 1) The 1970 deed from the Scotts to Arthur E. Bishop was not intended by the parties to secure the payment of the loan; 2) Plaintiffs Scott had an option to reacquire the property by purchasing from defendant Arthur E. Bishop; 3) There was no agreed date of termination of such option; 4) The property was worth $22,000. in 1970; 5) And was worth $40,000. in 1976.

Both parties moved for judgment on the verdict. The trial court denied plaintiffs' motion; granted defendants' motion; and rendered judgment plaintiffs take nothing.

Plaintiffs appeal on 9 points contending among other matters:

1) the trial court erred in not enforcing the option to reacquire the property by plaintiffs; that same was not within the prohibition of the Statute of Frauds because plaintiffs were in possession of the property; had paid all or part of the consideration; and had made valuable improvements upon the property.

2) the jury's answer to Issue 1 is so against the great weight and preponderance of the evidence as to be clearly erroneous.

Plaintiffs acquired their homestead, the property here involved, in 1940, and occupied it continuously for 38 years including time of trial. Plaintiff Richard Scott testified that in 1959 he deeded his home to one Mitchell Cook to get a loan of $5,000.; that the deed was not to be a deed absolute; that in 1964 Cook deeded the property to "Southwestern Diversified," at which time Scott borrowed $4,000. on the property from Southwestern. Southwestern was a partnership owned by Arthur E. Bishop and three others. The partnership terminated and Bishop acquired the property. Plaintiffs made monthly payments to Bishop. Plaintiff Scott testified he called Bishop in 1968 and told him he wanted "to pay off the debt"; that Bishop agreed; the accounts of the parties were adjusted and Scott paid Bishop some $3,500. additional, and Bishop deeded the property to Mrs. Scott. Bishop testified that there was an agreement the Scotts could purchase the property, and that he sold the property to them.

Plaintiff Scott testified that in May 1970 he called Bishop and told him he needed money; that they agreed on "the same deal as we had before"; that plaintiffs deeded the property to Bishop; that he received $5,000.; that Bishop assumed a loan on the property making total consideration to plaintiffs of about $11,500.

Bishop testified he bought the house for $12,500.; that he believed the house worth $18,000. or $19,000. at the time. The Scotts paid Bishop a $49.50 payment, $137.50 per month for 43 months; $187.50 per month

for 25 months; and $225. per month after February 1976 (plaintiffs called these payments; Bishop called them rent), for a total of $14,474.50. Plaintiffs further paid $2,148.16 for repairs on the property, which Bishop knew about, plus $150.68 for taxes. Bishop paid all other taxes of $2,007.72 and insurance of $325. on the property. Scott testified he called Bishop in September 1976 and told him he wanted to settle up, pay the house off, and get it back; that Bishop said his records were at the Pawn Shop; that he would have to get them and let him know; that the next he heard from Bishop was a letter stating he no longer owned the property. Bishop had deeded the property to his son Arthur Patrick Bishop for $40,000., who gave plaintiffs notice to vacate.

 The jury's findings 2 and 3 are amply supported by Bishop's testimony that plaintiffs had an agreement to purchase the property from him (which they did) in 1968; and plaintiff Scott's testimony that Bishop agreed that the 1970 transaction would be "the same deal as we had before". And the sale of property worth $18,000. to $22,000. for $11,500. without something further, makes the transaction suspect on its face.

In the prior transaction where the Scotts purchased the property from Bishop in 1968, the prior payments made by the Scotts to Bishop which were in excess of 10% interest on the money Bishop had paid for the property (or loaned on the property) plus taxes and insurance paid by Bishop, were counted as payments on the 1968 purchase by the Scotts, and Scott made an additional payoff to Bishop of $3,500.

Here the evidence reflects Bishop paid (or loaned on) $11,500. (or $12,500.) for (or on) the property in 1970 (plus $2,007.72 paid for taxes and $325. paid for insurance); that the Scotts have made $14,474.50 in payments to Bishop since 1970, which obviously some major portion of which was in excess of interest, taxes and insurance, and which was a part of the purchase price if "the deal was the same" as before.

Defendants assert the option being oral is prohibited by the Statute of Frauds.

It is undisputed plaintiffs paid $14,474.50; were in possession; and made $2,148.16 in improvements on the property.

 The option became a contract of sale when, plaintiff accepted same by telling defendant "he wanted to settle up, pay the house off, and get it back".

The terms of the contract of sale would be "the same deal we had before", i. e., the price Bishop paid for the house in 1970 ($12,500.).

 Possession, payment of the purchase price in full or in part, and valuable improvements take the oral option and contract out of the Statute of Frauds. *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114; *Walker v. Walker*, Tex.Civ.App. (Waco) NRE, 448 S.W.2d 171.

Plaintiffs' contentions supra are sustained and the cause is remanded.

REVERSED AND REMANDED.